UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| WILLIAM WASHINGTON,<br><br>           Plaintiff,<br><br>   v.<br><br>WASHINGTON DEPARTMENT OF CORRECTIONS, et al.,<br><br>           Defendants. | CASE NO. C17-5728 BHS-TLF<br><br>ORDER ADOPTING IN PART AND MODIFYING REPORT AND RECOMMENDATION, APPOINTING COUNSEL, AND DENYING PLAINTIFF'S MOTION FOR EXTENSION |

This matter comes before the Court on the Report and Recommendation ("R&R") of the Honorable Theresa L. Fricke, United States Magistrate Judge (Dkt. 52), Plaintiff's objections to the R&R (Dkt. 53), Defendants' objections to the R&R (Dkt. 54), and Plaintiff's motion requesting the appointment of counsel and an extension to file a response to Defendants' objections (Dkt. 56).

Plaintiff brought claims against Defendants under 42 U.S.C. § 1983 for violations of the Eighth and First Amendments as well as state law claims pursuant to RCW 7.70.030 for medical negligence and lack of informed consent. *See* Dkt. 5. Regarding Plaintiff's medical negligence and Eighth Amendment claims, Plaintiff alleged that Defendants diagnosed him with cirrhosis stemming from hepatitis C virus ("HCV") when

he entered Washington Department of Corrections ("WDOC") custody in August 2015, yet deliberately delayed any treatment of his condition for nearly two years, until after he developed cancer, before performing any follow-up care or imaging. *Id.* Regarding his First Amendment claim, Plaintiff alleged that several defendants attempted to discourage him from pursuing grievances regarding his healthcare. *Id.*

On February 2, 2018, Judge Fricke entered the R&R. Dkt. 52. The R&R concludes that Plaintiff's claims against Defendants WDOC, Van Ogle Rogers, Gordon, and twenty-nine unnamed "Does" should be dismissed for failure to state a claim. *Id.* at 30. The R&R also recommends that the Court should grant summary judgment in favor of Defendants Evans and Wright in light of Plaintiff's failure to exhaust administrative remedies in regards to his First Amendment claims against them. *Id.* Otherwise, the R&R recommends that the Court deny Defendants' motion to dismiss and motion for summary judgment. *Id.*

On February 16, 2018, Plaintiff and Defendants objected. Dkts. 53, 54. On February 23, 2018, Plaintiff requested an extension of time to respond to Defendants' objections and moved to appoint counsel. Dkt. 56. On March 1, 2018, Defendants responded to Plaintiff's objections. Dkt. 57. On March 8, 2018, Defendants responded to Plaintiff's motion to appoint counsel. Dkt. 59. The Court has also received notice from the Law Librarian at Stafford Creek Correction Center ("SCCC"), where Plaintiff was incarcerated, informing the Court that Plaintiff was being treated medically outside of the facility and would receive documents filed on or after March 1, 2018 upon his return. Dkts. 58, 60.

On April 17, 2018, Defendants filed notice that Plaintiff had died on April 4, 2018 in Aberdeen, Grays Harbor County, Washington. Dkt. 61 at 2. Defendants have dispatched a process server to serve notice of Plaintiff's death and this action on Leann Washington, Plaintiff's Sister, who Defendants believe to be Plaintiff's successor and representative. *Id.* at 2.

The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions. Fed. R. Civ. P. 72(b)(3).

## A. Defendants' Objections

Defendants have raised numerous objections. First, Defendants object to the R&R's refusal to dismiss all of Plaintiff's federal claims predicated on events occurring prior to November 1, 2016. To support their objection, Defendants cite *Woodford v. Ngo*, 548 U.S. 81 (2006), to argue that Plaintiff's claims predicated on such events are barred by his failure to file administrative grievances regarding his lack of HCV treatment until November 20, 2016, within twenty days of the alleged misconduct as required under WDOC's Offender Grievance Program. Dkt. 54 at 2–5.

In *Woodford*, an inmate filed a grievance regarding his placement in administrative segregation for engaging in inappropriate activity in a prison chapel. Subsequently, the prison began prohibiting him from "special programs" including a number of religious activities. The grievance was filed approximately six months after the prison began excluding the inmate from special programs. The Supreme Court

decided that 42 U.S.C. § 1997e(a) demanded the "proper" exhaustion of administrative remedies, including compliance with administrative deadlines and timeliness requirements. *Woodford*, 548 U.S. at 90. Therefore, the plaintiff's claims were dismissed because he failed to grieve the decision to place him under restriction within the applicable fifteen-day administrative deadline. The claims were dismissed for failure to timely grieve the decision to impose the restriction even though the denial of access to "special programs" was ongoing.

However, since the Supreme Court rendered its decision in *Woodford*, the Ninth Circuit has recognized that regardless of the "proper" exhaustion requirement, "when prison officials address the merits of a prisoner's grievance instead of enforcing a procedural bar, the state's interests in administrative exhaustion have been served." *Reyes v. Smith*, 810 F.3d 654, 657 (9th Cir. 2016). Accordingly, the Circuit has held that a prisoner adequately exhausts administrative remedies for the purposes of 42 U.S.C. § 1997e(a), "despite failing to comply with a procedural rule[,] if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Id.* at 658. Under this rule, the applicable administrative remedies were exhausted in this case. Although Plaintiff did not file a grievance regarding WDOC medical personnel's alleged delay in providing HCV treatment until November 20, 2016, that grievance specifically claimed that "WDOC and Medical Dept. has [sic] delayed me [Direct Acting Antiviral ("DAA")] treatment for over a year or sience [sic] I entered WDOC Coustody [sic] while knowing of my condition."

Dkt. 40-1 at 52. In response, WDOC rendered decisions on the merits of Plaintiff's grievance at each level of review. *See* Dkt. 40-1 at 49–68.

The Court agrees with Defendants' arguments that the R&R appears to improperly apply an equitable tolling rule to Plaintiff's failure to timely file administrative grievances for the actions of certain medical personnel in delaying his treatment. Nonetheless, WDOC addressed Plaintiff's grievance on the merits at each available level of administrative review. Therefore, notwithstanding the untimeliness of Plaintiff's grievance as it relates to delays in DAA treatment since he entered the WDOC, the Court finds that Plaintiff exhausted the applicable administrative remedies in regards to his claims that WDOC acted with deliberate indifference in delaying DAA treatment for his diagnosis of HCV from the time he entered WDOC custody until after he developed cancer.[1]

Second, Defendants "object" to the R&R's refusal to dismiss Plaintiff's claims against WDOC personnel whose only alleged actions involve investigating or responding to Plaintiff's grievances. Dkt. 54 at 5–11. The Court disagrees with this objection as it pertains to Defendants McTarsney, Dahne, and Caldwell. Defendants failed to raise their present arguments pertaining to each specific defendant in their underlying motion to dismiss; instead, they simply offered the blanket argument that the Defendants were entitled to rely on the opinions of medical professionals. Accordingly, Defendants'

---

[1] The Court notes that WDOC should not be criticized for addressing Plaintiff's grievance on the merits notwithstanding its untimeliness as to events occurring before November 4, 2016, particularly in light of the stakes involved with Plaintiff's grievance and the alleged delay of HCV treatment.

present arguments pertaining to these individual defendants are less objections than they are requests for further relief. The Court generally will not dismiss claims based on arguments that are raised for the first time in response to an R&R. This is particularly so where the record on its face suggests that there may be unresolved issues that preclude summary judgment. For instance, while McTarsney was entitled to rely on the opinions of the WDOC's medical professionals in denying Plaintiff's claims, McTarsney twice returned Plaintiff's grievance No. 16622119 with the instruction "[i]f you're going to cite law identify it, case law citations are not necessary as the Offender Grievance Program is not a legal forum. Rewrite, resubmit." Dkt. 5-1 at 2, 3. She did so even though in his original and first rewritten grievance Plaintiff clearly cited a case and wrote that the denial of DAA treatment constituted "deliberate indifference to my serious medical needs, and or [sic] Melpractice/Gross [sic] Negligence." Dkt. 5-1 at 2. Defendants have failed to explain why it was appropriate for McTarsney to twice return Plaintiff's grievance and delay a response by requiring him to rewrite it, particularly in light of the allegations of serious and urgent medical needs.

Similarly, Defendant Dahne is implicated in the delayed response to the level II appeal of Plaintiff's grievance no. 16622119, even if it is unclear what role he personally may have played in the prolonged delay. *See* Dkt. 5-1 at 7–9. On the present record, it is unclear what role a grievance coordinator plays in the grievance process, and how his or her actions pertain to the timely processing of grievances. It would be inappropriate to require an inmate to plead the specific conduct that an individual defendant took in delaying a grievance without allowing discovery when the applicable grievance records

reveal that the process was prolonged and the individual defendant was somehow involved in the delayed grievance process. To the extent Plaintiff claims that Dahne is liable for failing to provide Plaintiff with notice of "time extensions" or documentation regarding previous grievances in violation of WDOC policies, the Court recognizes that these allegations do not state a viable claim. *See* Dkt. 5-1 at 19. Violations of a grievance procedure do not by themselves give rise to claims under 42 U.S.C. § 1983. *See Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Nonetheless, this does not mean that Dahne cannot be liable for any personal conduct delaying responses to Plaintiff's grievances if such delays further prolonged Plaintiff's medical care in deliberate indifference to his serious medical need for timely HCV treatment.

Also, while it appears that Defendant Parris's involvement was limited to an investigation of Plaintiff's grievance no. 16622119, it is unclear what role is played by "Health Service Managers" such as Parris and how their participation in the grievance process may result in prolonged delays or involve formulating medical conclusions that might result in the denial of necessary medical treatment. If Parris reviewed Plaintiff's medical records and concluded that Plaintiff was properly treated, even though medical records indicated an ongoing prolonged delay in providing adequate HCV treatment, the Court is satisfied that the denial of Plaintiff's request for allegedly necessary treatment could constitute an unnecessary delay in treatment in deliberate indifference to a medical necessity.

It may be that the "rewrite instructions" from McTarsney were appropriate, or other delays in the grievance process may not have been the result of conduct by any

particular individual defendant or may not have resulted in a significant delay constituting deliberate indifference. Nonetheless, the Court finds that these issues are better left for summary judgment proceedings and resolution before Judge Fricke after appropriate discovery while Plaintiff is represented by counsel.

The Court agrees with Defendants' argument as it pertains to Defendant Caldwell. It appears that his only participation in Plaintiff's grievances was responding to grievance no. 17630385. While the Court generally will not grant relief on an argument raised for the first time in response to an R&R, it is clear that any claim against Caldwell must fail because grievance no. 17630385 does not grieve any alleged delay of medical care and there are no allegations that Caldwell participated in retaliating against Plaintiff or chilling his First Amendment rights. *See* Dkt. 5-1 at 19–21. If anything, Caldwell's response to the grievance encouraged Plaintiff's present lawsuit by stating as follows:

> [I]t appears that your level II response does mention your concerns are being addressed, and that local administration is aware of their tardy administrative response. Corrective action against staff is not shared with offenders; however in this case as stipulated corrections have been made to ensure that this does not occur again. Your allegation regarding particular grievance interviews are being conducted late at night is troublesome; this office will ensure that if this alleged practice is being conducted, it discontinues immediately.

Dkt. 5-1 at 21. Accordingly, the Court will grant Defendant's request for further relief in part and dismiss Plaintiff's claims against Defendant Caldwell.

Finally, Defendants object to the R&R's refusal to dismiss Plaintiff's claims against Dr. Donahue. Dkt. 54 at 11–12. The Court agrees. Plaintiff's complaint fails to attribute any wrongful conduct to Dr. Donahue other than a purported "clandestine

meeting" with other defendants on April 7, 2017. Dr. Donahue's participation in a meeting is insufficient to support a claim for deliberate indifference when Plaintiff does not allege that, as a result of the meeting, Dr. Donahue took any actions to delay Plaintiff from receiving timely HCV treatment. Plaintiff does not even allege that Dr. Donahue was responsible for providing him with treatment, deciding the prescribed course of treatment, or otherwise personally participating in Plaintiff's medical care. Accordingly, the Court agrees with Defendants' objection that Plaintiff's claims against Defendant Donahue should be dismissed.

### B.     Plaintiff's Objections

Plaintiff first objects to the dismissal of Defendants Van Ogle, Rogers, and Gordon. Dkt. 53 at 1. He argues that Van Ogle and Rogers "failed to act, while having a duty to protect [Plaintiff] from further harm." Dkt. 53 at 1. He further claims that they "did have knowledge and personally [participated] in the violation of [Plaintiff's] constitutional rights while denying him treatment for his serious medical needs." *Id.* However, these conclusory allegations, like the claims against these defendants in Plaintiff's complaint, are devoid of any underlying explanation as to how these defendants personally participated in any alleged deprivation of Plaintiff's rights. Even if Plaintiff could plead additional facts regarding these defendants' personal participation in delaying his medical treatment or instituting policies that resulted in an unconstitutional delay of medical treatment, those allegations are not presently included in the complaint. Similarly, Plaintiff argues that Gordon interfered with his communications to health care providers, *id.* at 2, but the Court cannot locate any factual allegations from the complaint

to support this claim, nor has Plaintiff offered any citation. Accordingly, the Court will adopt the R&R and dismiss these claims with leave to amend.

Plaintiff next objects to the R&R's entry of summary judgment in favor of 28 unnamed "Doe" defendants. Dkt. 53 at 2.[2] However, Plaintiff only attributes specific conduct to two of the 30 unnamed "doe" defendants. *See* Dkt. 5. Because the remaining 28 unnamed defendants are merely placeholders without any describing details or alleged conduct in the complaint, they were properly dismissed. Should Plaintiff discover the identity of additional parties who allegedly wronged him through the course of litigation, he may appropriately move to amend his pleadings and add allegations pertaining to newly discovered parties at that time.

Plaintiff next objects to the R&R's entry of summary judgment on his retaliation claims against Defendants Evans and Wright for failure to exhaust the applicable administrative grievance procedures. Dkt. 53 at 3. The R&R correctly noted that Plaintiff continued to file and pursue administrative grievances notwithstanding these defendants' alleged attempts to discourage him, including his grievance claiming that Defendant DeHaven was visiting his cell at late hours of the night to discourage any further grievances. *See* Dkt. 5-1 at 21. Accordingly, Defendant has failed to show that these defendants' alleged conduct "actually did deter [him] from lodging a grievance or pursuing a particular part of the process." *McBride v. Lopez*, 807 F.3d 982, 987 (9th Cir. 2015) (quotation omitted). Moreover, the R&R properly concluded that Evans's single

---

[2] The Court notes that Plaintiff has not objected to the dismissal of Plaintiff's § 1983 claims against the "Doe" defendant who purportedly "botched" his blood draws.

statement that Plaintiff "might ruffle the wrong feathers" by further pursuing his grievances and Wright's removal of Plaintiff from his prison job were not of a nature that they would deter "a reasonable prisoner of ordinary firmness" from grieving Evan's or Wright's conduct. The First Amendment claims against Evans and Wright were properly dismissed.

## C. Appointment of Counsel

The Court concludes that this case merits the appointment of counsel to represent Plaintiff. To decide whether exceptional circumstances exist that warrant the appointment of counsel, the Court must evaluate both "the likelihood of success on the merits [and] the ability of the [plaintiff] to articulate his claims pro se in light of the complexity of the legal issues involved." *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986) (quoting *Weygandt v. Look*, 718 F.2d 952, 954 (9th Cir. 1983)). The Court finds that this case involves complex issues that Plaintiff lacks the ability to properly address pro se, particularly in light of the complex medical subject matter and potentially far-reaching policy considerations this case presents involving prison administration and the applicable standards of care for the treatment of HCV. Furthermore, this case has already been affected by Plaintiff's significant difficulty in prosecuting his claims while undergoing treatment that is now being provided. While it remains unclear if Plaintiff will succeed in establishing that he suffered a constitutional violation due to delays in his medical treatment or that Defendants are not entitled to qualified immunity, Plaintiff has shown that his likelihood of success is enough that it warrants the aid of capable counsel. The Court is satisfied that there is a sufficient likelihood that a constitutional violation

occurred for the purpose of appointing counsel if adequate treatment of Plaintiff's HCV was indeed prolonged for such a period that Plaintiff was allowed to develop cancer as alleged in the complaint. Moreover, Plaintiff has died in the custody of WDOC.

**D.     Substitution of Parties**

In light of Plaintiff's death, if the case is to proceed, the Court notes that it will be necessary for appointed counsel to work with Plaintiff's personal representative to substitute Plaintiff's estate and representative in accordance with Federal Rule of Civil Procedure 25 within ninety days.

**E.     Conclusion**

The Court having considered the R&R, Plaintiff's objections, and the remaining record, it is hereby **ORDERED** that the R&R is **ADOPTED in part** and **MODIFIED in part** as follows:

(1)     Defendants' motion to dismiss (Dkt. 34) is **GRANTED in part** as to Plaintiff's claims against the WDOC and Defendants Van Ogle, Rogers, Gordon, Caldwell, Donahue, and 29 Doe defendants. Because Plaintiff's claims against the WDOC are barred by the doctrine of sovereign immunity, those claims are **DISMISSED without leave to amend**. Because it is not absolutely clear that Plaintiff's claims against Defendants Van Ogle, Rogers, Gordon, Caldwell, Donahue, and 29 Doe defendants could not be cured without amended pleadings, Plaintiff's claims against these defendants are **DISMISSED with leave to amend**. Otherwise, Defendants' motion to dismiss is **DENIED in part** as it pertains to Plaintiff's claims against the remaining defendants.

(2) Defendants' motion for summary judgment (Dkt. 39) is **GRANTED in part** as to Plaintiff's First Amendment claims against Defendants Evans and Wright. Otherwise, Defendants' motion for summary judgment is **DENIED in part**.

Additionally, it is hereby **ORDERED** that:

(1) Plaintiff's motion to appoint counsel (Dkt. 56) is **GRANTED**. The Clerk shall identify an attorney or law firm from the Court's Pro Bono Panel to represent Plaintiff.

(2) Plaintiff's motion for an extension of his deadline to respond to Defendant's objections is **DENIED**.

This matter is **RE-REFERRED** to Judge Fricke for further proceedings. After counsel has been appointed for Plaintiff, Judge Fricke may issue a scheduling order with deadlines for amended pleadings or discovery.

Dated this 18th day of April, 2018.

BENJAMIN H. SETTLE
United States District Judge